OPINION
{¶ 1} Defendant-appellant Bobby Charles Johnson appeals from his conviction and sentence, following a no-contest plea, upon one count of Possession of Crack Cocaine. Johnson contends that the trial court erred by denying his motion to suppress evidence obtained as a result of an allegedly unlawful search and seizure.
 {¶ 2} Based upon our review of the transcript of the suppression hearing, we conclude that the trial court did not err in finding that the evidence was obtained as a result of a lawful weapons pat-down. Accordingly, the judgment of the trial court is Affirmed.
 {¶ 3} In its decision denying Johnson's motion to suppress, the trial court made the following findings of fact:
 {¶ 4} "On December 16, 2004, members of the Dayton Police Department Drug Task Force executed a search warrant on a premises located at 1274 Dietzen Avenue, Dayton, Ohio. The search warrant was issued by Judge John Pickrel of the Dayton Municipal Court. The Defendant in this case was not identified in the search warrant but was an occupant of the premises located at 1274 Dietzen Avenue, Dayton, Ohio, when the search warrant was executed.
 {¶ 5} "The officers executed the search warrant by knocking on the front door of the residence, announcing 'Dayton Police Officers executing search warrant,' and then forcing the door. When the officers entered into the premises, all occupants of the premises were ordered to lie on the floor and place their hands above their head. Defendant Johnson, following the order of the police officers, assumed a prone position on the floor of the residence. When Johnson was on the floor, Detective [William T.] Abels [sic, correct name is Ables] patted him down for weapons. In the pat down Detective Abels [sic] felt a hard rock substance in Defendant Johnson's pocket. Because of this training and experience it was immediately apparent to him that what he felt was a piece of crack-cocaine. He then went into the Defendant's pocket and retrieved a large rock of crack-cocaine. The Defendant has now been charged with possession of cocaine, more than 25 grams but less than 100 grams in crack form."
 {¶ 6} We have reviewed the entire transcript of the suppression hearing, and there is evidence in the record to support the trial court's findings. We would only add that Ables testified that has been doing pat-down searches of persons "suspected of drugs" for ten years, and that he has recovered crack cocaine "several times, hundreds of times," since he as been on the Dayton police force. He also testified that he has been in "the drug unit" for five years.
 {¶ 7} Johnson was arrested and charged by indictment with one count of possession of crack cocaine in an amount equaling or exceeding 25 grams, but less than one hundred grams, in violation of R.C. 2925.11(A). Johnson moved to suppress the evidence, contending that it was obtained as the result of an unlawful search and seizure. Following a hearing, the trial court denied the motion to suppress.
 {¶ 8} Following the denial of his motion to suppress, Johnson pled no contest to the charge, was found guilty, and was sentenced accordingly. From his conviction and sentence, Johnson appeals.
 II {¶ 9} Johnson's sole assignment of error is as follows:
 {¶ 10} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY OVERRULING HIS MOTION TO SUPPRESS."
 {¶ 11} Johnson contends that because he was not identified, either by name or by description, in the search warrant, a fact found by the trial court and not disputed by the State, he should not have been searched by the police officers who entered the house at 1274 Dietzen Avenue to execute the search warrant. He contends that the officers lacked a reasonable, articulable suspicion justifying a weapons pat-down.
 {¶ 12} We have previously opined that police officers executing a warrant to search a house based upon probable cause to believe that illegal drugs are present may properly order the occupants of the house to lie on the floor, handcuff them, and pat them down for weapons, in the interest of officer safety. State v. Crusoe, 150 Ohio App.3d 208,2002-Ohio-6389, 779 N.E.2d 1095, at ¶ 82. In the case before us, there was probable cause to believe that illegal drugs were being sold at 1274 Dietzen Avenue, based upon information, including a controlled buy, from a confidential informant, which is why a search warrant was issued.
 {¶ 13} Although Johnson was not named in the warrant, he was present when the warrant was executed. Some time before the warrant was executed, on the same day, a confidential informant went into the premises, and observed a firearm. As soon as the police entered the premises, they noticed that it did not appear to be used as a residence. One officer testified:
 {¶ 14} "The main living room area where all the individuals inside the residence were located had a couch and actually a chair from a vehicle that was sitting in the living room. There was no — I don't believe there was a TV operating.
 {¶ 15} "The kitchen, which was located right off of the living room, was in deplorable conditions. There was a room back behind the kitchen that had basically nothing in it but a table.
 {¶ 16} "Off of the living room there were two other rooms that were vacant. There was nothing in these rooms. Then a bathroom, and then finally a rear bedroom that did have some items that would appear an individual may have slept in that room.
 {¶ 17} "Q. Such as?
 {¶ 18} "A. It was a mattress and box spring lying on the floor, clothes scattered all over the place."
 {¶ 19} From these observations, it was reasonable for the police officers executing the warrant to conclude that the persons present were not residents of the household who were unrelated to the criminal activity taking place therein, but were either participants in the drug selling operation, or customers. Furthermore, one of the officers testified that he saw someone looking out a window as the police team, who were readily identifiable as police, were approaching, which elevated the concern that persons in the premises might be arming themselves. That, combined with two reports of a confidential informant that a firearm was visible inside the residence, and the observation by the police officers themselves, immediately upon entering the residence, of a firearm in plain view, justified a legitimate concern that the occupants of the premises, including Johnson, might be armed.
 {¶ 20} We conclude, therefore, that the police officers executing the search warrant were justified in conducting a pat-down of the occupants for weapons. Ables testified that when he patted down Johnson's outer coat pocket, he could immediately feel what he believed, based upon his ten years of experience performing pat downs, was crack cocaine. He testified that he "felt it with the inside palms and fingers as I'm going across the body," and that it was "[a] hard irregular rock-like piece-object," "[a]bout the size of probably a golf ball." Ables's plain-feel recognition of the object inside Johnson's outer coat pocket justified his removal of the object from Johnson's pocket. Minnesota v.Dickerson (1993), 508 U.S. 366.
 {¶ 21} Johnson's sole assignment of error is overruled.
 III {¶ 22} Johnson's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.